Good morning, Your Honors. Gregory Link representing Jimmy Miller in this amount of time. I'd hope to hold on to a minute or two for rebuttal. All right. I'll try to watch, but you've got your clock there as well. We'll see where we go. Mr. Miller's lack of control or connection to the firearm that was found in the locked glove box of another person's car should lead this court to reverse his conviction. I think it's black letter law that from this circuit and others as well that more than mere proximity to a weapon is required to establish possession. The court has repeatedly said you need to have dominion and control either over the item itself or the place in which it's found. Weren't there witnesses at the bar that said that your client raised his shirt and showed a firearm in his waistband? What the witness saw and what the witness... Again, I hope you learn from watching the last argument. Please start with the yes or no. The answer is yes. There was a witness who described seeing a black rectangle in his waistband slightly larger than a cell phone. She did not describe a firearm per se. That's all she was able to describe. She told other people that she believed it to be a gun. She's the only individual that saw it. The victim did not testify that he saw anything. Much of your briefing is really dedicated to trying to impeach, is it correct? Yes. She later described it as a gun. You suggest that she had all kinds of different motivations to lie. In your view, when did the earliest of those motivations arise? In our view, and I think the evidence's view, it appears that she had a motive from the beginning of the story that's being told in this case. Her first interactions with the waitstaff, or early interactions with the waitstaff, trying to ask the waitstaff to tell her boyfriend that someone else was purchasing her drinks, not this other individual. Asking them specifically to say, tell them she bought me this drink. What was her motive to lie then? I was trying to tie that into the outstanding bench warrants and I was getting confused. Her motive to lie there seems to be that she's trying to cover something up from her boyfriend, from Mr. Carthan, who ends up getting into a fight with Mr. Miller. That seems to be the plain motivation that she has. It's to him that she's asking the waitstaff to lie. If he asks where I got this drink, tell her someone else bought it for me. That continues. We see that when she asks, when she first goes to the same waitress and says, please call 911, this individual has a gun, and she says, no, no, no, you go call, you saw them, you need to describe them. She refuses to do that. We see it continue while that waitress is actually on the 911 call, repeatedly asking Ms. Mangisteb, you talked to them, you saw them, you need to, and she's overheard on the 911 tape saying, no, I don't want to talk to them. She seems to plainly be trying to structure the events of some manner that allows a police response without her actually becoming involved in this thing. So to prevail on the appeal from your perspective, would you need to have a decision in your favor both on the ruling on the prior and consistent statements, the hearsay statements, in order to have the sufficiency of the evidence challenged or not? Or are they two distinct issues? I believe that the government's evidence, even with her statements, is too weak to establish. Because again, I think we have to keep in mind that when she described seeing this black rectangular item, she couldn't have possibly have seen an entire gun, and this is just common sense, because it was in his waistband. There's no claim by her that he ever took the gun from his waistband. If an item is tucked in one's waistband, obviously you can't see the other half of it. You see only the tip of the piece of evidence the government has, this black rectangular object in his waistband. So I think the government's evidence is weak by itself, but I think the 801 ruling by the district court was incorrect as well, and I think once that evidence is taken out, the government's evidence becomes weaker still. So I would ask the court to conclude that the district court was incorrect in admitting the evidence under 801. You tried the case? I did not try the case. At trial, the second trial, was the witness who saw the object cross-examined? She was. And was she, in cross-examination, accused of recent fabrication? It was not directly put to her that you made up this story recently, no. She was cross-examined on the notion that she was making up the story before she even made the first revelation to the bar staff that evening. Do you think there's a difference? Only on the point of recent, because I think she was cross-examined to the point that the motivation existed prior to any statement. If the jury heard that, they could see all the potential reasons she had to cover up and fabricate, correct? Yes. And the jury heard all that, they heard her testimony, they heard the 911 call, they heard Ms. Guidry's statement, why it's hard on the standard of review in the face of that evidence to suggest that any claim on the inconsistent evidence wouldn't be harmless, isn't it? Well, I think if we look at the fact that the jury hearing this evidence, a jury, a different jury, having heard this the first time. Not a different jury, the jury that actually heard it. That's the one we're reviewing. What's the standard of review? In analyzing the question of harmless error or prejudice. What's the standard of review? Is there sufficient substantial evidence to support the verdict despite that? I think the weakness of the government's case is illustrated by the result of the first trial. The government's evidence was not strong by any measure, and I think that's On your theory, once you get a hung jury, you're home free on your second one if you have essentially the same evidence. And we know that's not true under Jackson v. Virginia or any other authority, right? No, that's not true. I'm having some trouble understanding your argument that, well, once a hung jury, that you get to ride into the sunset on the hung jury in your second trial. Do you have any authority for that? I'm not suggesting that you get to ride on the hung jury in perpetuity. I'm simply using that as an illustration of the weakness of the government's case, and I don't think it's disputable that the government's case was fairly weak here. It hinged on Ms. Menjesteb's view, or it required the government to prove proximity to the goat found in the glove box, the locked glove box. I think in our brief we've addressed as well as we can the requirement of this court needing to reverse for that evidentiary. I think the evidence is insufficient to support the conviction. I think the district court was wrong in admitting this evidence, and I'd ask the court to reverse Mr. Miller's convictions. Thank you. Thank you. May it please the Court. Charlene Kosky for the United States. I would start by emphasizing the evidence that the government did present in this case. Much of which has not yet been touched on. On May 29, 2013, Mr. Miller received a text message on a phone that was his. The message that he received said, did I leave any extended clips over there with that 40? He responded, no, just the one that was in there. Less than two weeks later, he's seen at the garage with what a witness described as looking like a gun, a black gun tucked into the waistband of his pants. He's caught on videotape leaving, going into the alley behind the garage, the bar where they were. He's caught on videotape assaulting Mr. Carthan. The videotape also shows two employees from the garage coming out and viewing him assaulting Mr. Carthan. So Mr. Miller knows that he was seen assaulting Mr. Carthan. He also knows that he's a felon who's not supposed to have a gun. The video also shows him getting into the passenger side of a vehicle that doesn't belong to him, that's driven by his girlfriend. The vehicle is seen. About 40 minutes later, police find it parked. The engine's off. The lights are off. It's sitting next to a park. Mr. Miller is seen walking quickly away from the vehicle. He's stopped. He says, yes, I just came from the garage. Yes, this cell phone is mine. And then when police eventually search the car after they take it in, they seize it and they search it later, they happen to find a black gun in the glove compartment sitting on top of the other items in the glove compartment as though the person who was just in the passenger seat set it there. So what significance to you does it have that it was locked, this glove compartment, as I understand it? Correct. It was locked. And in light of all the other evidence, it doesn't have much significance at all because the strength of the other evidence is enough to support the jury's verdict. They were basically faced with two possible inferences here. Either Mr. Miller is the unluckiest person in the world and that he had a text message describing the exact gun that they found. He was described by a witness having a gun all within the short amount of time or he possessed the gun. And I would say that the reasonable inference here is that he did possess the gun. It may not have been the inference the jury drew, but a reasonable inference of that first text is that the gun, in fact, was owned and possessed by someone else. Correct. But it's also, I don't think the inference that's drawn on that from, since he had the message and said just the one that's here, just the clip that you left here with it, the inference is that he had the gun at that time. When law enforcement officers found the weapon in the glove compartment, in which direction was it pointed? The barrel of the gun was facing the driver as though someone sitting in the passenger seat took it out and placed it there. Could I just stop for one second? It's not going to affect how much time we give you, but the clock was stuck. Thank you. Sure. If I were sitting in the passenger seat of a car and I was putting a loaded weapon in the glove compartment, I think the last thing I would do is have the barrel pointed at me. That's the condition the officers found it in, right? Right, pointing toward the driver. So he was in the passenger seat. So he didn't point it toward himself. But I would argue that what the evidence suggests is that Mr. Miller did exactly what you would think he would do. He was a felon. He knew that he'd just been observed assaulting Mr. Carthen. He gets into the car, and either him or his girlfriend, whoever did it, they had 40 minutes between the time that they left the garage and the time that they parked the car. They put that gun in there, they locked it up, and he walked away from the car because he knows that people are going to be looking for him based on the assault, and he knows that he's a felon who's not supposed to have a firearm. He also had no DNA evidence. Exactly. There's no DNA evidence? No DNA evidence. Normally on something like this you'd think, okay, well, got the gun, he had it in his hand, he sticks it in the glove box, and here we have DNA evidence that doesn't do anything to implicate him. You're going to say it didn't exonerate him either, but of course the standard is beyond a reasonable doubt, isn't it? The standard is beyond a reasonable doubt, but on review here, this court's role is to review reasonable inferences and draw those inferences in favor of the verdict and assume that the jury drew them in that manner. I would say that, yes, that is true. There was no DNA or fingerprints on the gun. I've cited cases in the brief in which there are similar circumstances, no fingerprints on the gun. The testimony at trial was also that it's very uncommon to actually find fingerprints on a gun due to the texture of the gun. So it's not unusual that the gun didn't have fingerprints, and the evidence that they did have did not exclude him as a suspect. So that's just one piece of evidence in this, and I would say all the evidence that the jury submitted or that the government submitted, it's the jury's role to weigh that evidence and to draw the inferences. Moving on to prior consistent statements, I would just point out that Ms. Magistia was examined on the timing of her arrest warrant and whether she knew about the arrest warrant and whether she had received any benefit or been promised a benefit in exchange for her testimony. The evidence was that she had not. The evidence was also that Detective Waters, when he showed up to talk to her to serve her her subpoena, he informed her about the warrant, she didn't know about it, and he said that he didn't tell her he would do anything about it, he simply said, you need to take care of that. That motive, she was examined about that, and it would have arisen long after the night at the garage. I would also point out that the 911 call also arose after Ms. Magistia told at least Jan Wallstrom, who was standing back by the door, that she saw Mr. Miller with a gun. And regarding the comments about having her buy a drink for someone else, I would say the evidence showed that Ms. Magistia denied ever doing that and she thought that Ms. Guidry had confused her with someone else, and Ms. Guidry actually didn't get the identification correct when she looked at the photos. Ms. Magistia was with another African-American woman, and Ms. Guidry got the identification of them wrong. So the testimony in this trial was that most likely Ms. Guidry was confused about who said what, and Ms. Magistia said she bought all her own drinks that night and that she never asked a waitress to lie for her. But even if all those alleged motives are out there, it shouldn't prevent the government from presenting evidence of prior consistent statements that arose or were stated prior to the motive that arose, at least regarding her arrest, and whether she was expecting to receive a benefit in exchange for her testimony. So under Rule 801, all those prior consistent statements can come in to rebut that alleged motive to lie. If there are no other questions, I would ask that you affirm. Thank you. Thank you. You have some rebuttal time. Unless the Court has any specific questions, I'd just ask the Court to reverse Mr. Miller's convictions. Thank you. No further questions. We do have good briefing on this, and thank you both for your arguments this morning. The case just argued of United States v. Miller is submitted.
judges: Hawkins, McKeown, Gleason